**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| HECTOR L. HUERTAS, | |
|     Plaintiff, | Civil No. 17-1891 (RMB/AMD) |
| v. | OPINION |
| FOULKE MANAGEMENT CORP., CHERRY HILL MITSUBISHI, ANTHONY TRAPANI, et al., | |
|     Defendants. | |

**APPEARANCES:**

Hector L. Huertas, *pro se*
P.O. Box 448
Camden, New Jersey 08101

CAPEHART & SCATCHARD, P.A.
By: Laura D. Ruccolo, Esq.
8000 Midlantic Drive, Suite 300S
P.O. Box 5016
Mount Laurel, New Jersey 08054

**BUMB**, UNITED STATES DISTRICT JUDGE:

    *Pro se* Plaintiff Hector Huertas brings this suit against various defendants in connection with his purchase of a used car on December 22, 2016. Huertas primarily asserts that he was duped into purchasing a car on credit terms he ultimately could not afford, at an inflated price. He seeks compensatory / statutory damages of $81,092.40, punitive damages, and costs of suit.

Defendants Foulke Management Corp., Cherry Hill Mitsubishi, Cherry Hill Triplex, and Anthony Trapani (collectively "Foulke Management") move to compel arbitration. (Dkt No. 5) Defendant "Capital One, N.A." / "Capital One Financial Corp." ("Capital One") also separately moves to compel arbitration. (Dkt No. 17)[1] In response to Capital One's motion, Huertas moves to amend his complaint. (Dkt No. 21) Oral argument on all outstanding motions was held on December 15, 2017. For the reasons stated herein, Foulke Management's motion will be granted, Huertas' Motion to Amend will be dismissed without prejudice with leave to renew for failure to comply with L. Civ. R. 7.1(f), and Capital One's motion to compel arbitration will be administratively terminated pending further proceedings with respect to Plaintiff's proposed amended pleading.[2]

## I. FACTS

The Complaint alleges the following facts. Sometime in December, 2016, Foulke Management sent Huertas a "promotional

---

[1] The other Defendant to this suit is "David Michael Sciolla Insurance." The Court has no record of Sciolla Insurance having been served with process, and no attorney has entered an appearance on Sciolla Insurance's behalf.

[2] Also pending are three other motions filed by Huertas: (1) Motion for Leave to File a Sur-Reply (Dkt No. 11) in further opposition to Foulke Management's motion; (2) Motion to Strike Capital One's Opposition to Huertas' Motion to Amend (Dkt No. 25); and (3) Motion to Strike Capital One's Opposition to the Motion to Strike (Dkt No. 29). As to (1), the Court has concluded that the proposed sur-reply would not be helpful in this instance. Accordingly, the motion for leave to file will be denied. As to (2) and (3), those motions will be denied as moot in light of the disposition of Huertas' Motion to Amend.

2

mailer" which appeared to indicate that Huertas had won $25,000.00. (Compl. ¶ 7) Huertas called the telephone number on the mailer and was given an appointment time of December 22, 2016 at 4 p.m. at the Cherry Hill Mitsubishi car dealership. (Id. at ¶ 7-8)

On December 22, 2016, Huertas arrived an hour early for his appointment, and inquired about his prize at the front counter. (Compl. ¶ 9) The employee behind the counter explained that Huertas "had not won the $25,000 grand prize but had won a $50 gift card for restaurant.com." (Id. at ¶ 10) The employee then asked Huertas whether he would like "to be evaluated for prequalification for a car." (Id. at ¶ 11) Although initially reluctant, Huertas "then changed his mind and agreed to be evaluated because he had already made the trip via public transportation and did not want to waste any more time making another trip to a dealer in the future." (Id. ¶¶ 12-13)

After providing some "financial and credit information" to Tyler Medina, Huertas "was qualified to purchase a car with no money down." (Compl. ¶¶ 16-18)

Medina then took Huertas on test drives of three different vehicles, including a 2013 Hyundai Sonata, which Huertas decided to purchase. (Compl. ¶¶ 19, 22, 34 and Ex. H)

Several hours passed before Huertas joined Woodrow Wilson in the finance office "to sign and finalize the transaction." (Compl. ¶ 41-42) By this time, it was "about 9:00 p.m. closing time," and

3

Huertas "was extremely hungry, somewhat weak, exhausted from waiting, and paranoid." (Id. at ¶¶ 42, 44)[3]

The Complaint further alleges:

> 45. Woodrow Wilson was sitting behind a desk with a stack of documents and just told [Huertas] 'sign here, here, and here' while holding on to each document and pointing with his index finger to the signature lines on the documents where [Huertas] had to sign to complete the transaction.
>
> 46. [Huertas] focused only on these multiple signature lines within the documents and did not focus on any other aspect of the document due to his exhaustion while Woodrow Wilson took back each document and then presented to [Huertas] one document after another in rapid fire fashion while maintaining physical control of the documents.
>
> 47. Woodrow Wilson stacked the documents on top of the desk and maintained physical control, which procedure covered up the documents underneath making it difficult for [Huertas] to focus on any one document so that he never saw any disclosures or even the titles of the documents.
>
> 48. Woodrow Wilson did not discuss any document with [Huertas] other than instructing [Huertas] to sign on the numerous signature lines within the documents.
>
> 49. 5 documents contained multiple signature lines or clauses, while 6 documents contained one signature line.

(Compl. ¶¶ 45-49)

---

[3] Huertas alleges he was told that the lengthy passage of time between his arrival and the completion of the car sale was the combined result of paperwork processing, and "other customers ahead of him." (Compl. ¶ 24, 41)

After the transaction was completed, "at approximately 9:15 p.m.," another salesperson drove Huertas and the car to Huertas' residence. (Compl. ¶ 54)[4]

Allegedly within a few days of the purchase, Huertas unsuccessfully attempted to "cancel" the contract of sale because he had not received title to the car on the day of purchase, and the rear passenger-side tire leaked. (Compl. ¶ 57)

The Complaint asserts seven counts, although some appear to overlap: (1) "violation of [N.J.S.A.] §§ 56:8-68 and 69 and N.J. Unfair and Deceptive Acts and Practices [sic]"; (2) "violations of the Motor Vehicle Information and Cost Savings Act, 49 U.S.C. §§ 32701-32711"; (3) "violation of the [Truth In Lending Act's] requirement of finality"; (4) "violation of the [Equal Credit Opportunity Act's] notice requirements"; (5) "violations of the Truth in Lending Act"; (6) "violation of [N.J.S.A.] §§ 56:8-68 and 69 and N.J. Unfair and Deceptive Acts and Practices [sic]"; and (7) "all violations committed by Defendant [Foulke Management] are alleged against Capital One pursuant to the FTC Holder Rule if such claims are ordered to arbitration."

Most directly relevant to the instant motion, one of the documents Huertas admittedly signed at the dealership was an "Arbitration Agreement." (Compl. ¶ 50; see also Kopp Cert. Ex. B)

---

[4] Allegedly Huertas did not drive himself home in the car he had just purchased because he did not have a drivers license at the time. (Compl. ¶ 1 n.1)

5

However, Huertas states, "at the time of consummation, [he] did not review any of the documents he signed because he was extremely hungry, somewhat weak, confused, disoriented, and significantly paranoid because he either completed the sale and rode inside the car back home or had to take a bus back home that late at night." (Compl. ¶ 1)

The one-page Arbitration Agreement bears the following warning at both the top and bottom of the page, in capital letters and bolded: "READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO MAINTAIN A COURT ACTION." (Kopp. Cert. Ex. B) Notably, the bottom warning appears immediately above Mr. Huertas' signature:

**READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO MAINTAIN A COURT ACTION.**
You and we have entered into this agreement as of the "Date" written above.
CUSTOMER By: _[signature]_   SELLER By: _[signature]_
CUSTOMER By: _____
You acknowledge that you have received a completed copy of this agreement.
_[initials]_  _____    **CONTRACT ACKNOWLEDGMENT**
Initials  Initials
Date __12/22/2016__
I, AS THE UNDERSIGNED, HEREBY ACKNOWLEDGE THAT THE ATTACHED CONDITIONAL SALES OR LEASE CONTRACTS WERE FULLY COMPLETED AND EXPLAINED TO ME PRIOR TO MY AFFIXING MY SIGNATURE ON THE CONTRACT. I IMMEDIATELY RECEIVED A COPY OF THE CONTRACTS ALONG WITH THIS ARBITRATION AGREEMENT, AND ACKNOWLEDGE THAT I FULLY UNDERSTAND THE CONTENTS THEREIN.
SIGNER _[signature]_    CO-SIGNER _____

(Id.)

> The Arbitration Agreement states in relevant part,
>
> In consideration of the mutual promises made in this agreement, you and we agree that either you or we have an absolute right to demand that any dispute be submitted to an arbitrator in accordance with this agreement. If either you or we file a lawsuit, counterclaim, or other action in a court, the other party has the absolute right to demand arbitration following the filing of such action.

6

ARBITRATION: Arbitration is a method of resolving disputes between parties without filing a lawsuit in court. By signing this agreement, you and we are both agreeing that if there are any disputes between you and us, either you or we may require that such dispute be submitted to an arbitrator in accordance with this agreement. If either party demands arbitration, the arbitrator's decision will be final and binding on you and us. The arbitrator will provide any written reasons for the decision. You and we are giving up the right to continue a lawsuit, counterclaim, or other action in court, including the right to a jury trial, in the event the other party exercises the right to demand arbitration pursuant to this agreement.

DISPUTES COVERED: This agreement applies to all claims and disputes between you and us. This includes, without limitation, all claims and disputes arising out of, in connection with, or relating to:

- Your purchase of any goods or services from us;
- Any previous purchase of goods or services from us;
- All the documents relating to this or any previous purchase of goods or services from us;
- Any service contract or other after market products purchased in connection with this or any previous purchase;
- <u>Whether the claim or dispute must be arbitrated;</u>
- <u>The validity of this arbitration agreement;</u>
- Any negotiations between you and us;
- Any claim or dispute based on an allegation of fraud or misrepresentation, including fraud in the inducement of this or any other agreement;
- Any claim or dispute based on a federal or state statute including, but not limited to the N.J. Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. and the Federal Truth in Lending Act;
- Any claim or dispute based on an alleged tort; and
- Any claim or dispute based on breach of contract.

This agreement also applies to any claim or dispute, including all the kinds of disputes listed above, between you and any of our employees or agents, any of our affiliate corporations, and any of their employees or agents and any third parties related to this transaction.

(Kopp Cert. Ex. B)(emphasis added).

## II. MOTION TO COMPEL ARBITRATION STANDARD

Motions to compel arbitration are reviewed under the standard for summary judgment found in Federal Rule of Civil Procedure 56(a). Flintkote Company v. Aviva, 769 F.3d 215, 219 (3d Cir. 2014). Under this standard, "the motion should be granted where 'there is no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a)). In applying this standard, this Court must view the facts and draw inferences in the light most favorable to the nonmoving party "because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." Century Idem. Co. v. Certain Underwriters at Lloyd's London, 584 F.3d 513, 528 (3d Cir. 2009)(quotations and citations omitted).

## III. ANALYSIS

### A. Foulke Management's Motion to Compel Arbitration

Foulke Management moves to compel arbitration based on the Arbitration Agreement which Huertas admits he signed. In opposition to the motion, Huertas argues: (A) the arbitration agreement "is substantively unconscionable"; (B) "the [Magnusson-Moss Warranty Act] bars all warranty claims from binding arbitration"; (C) "the official interpretations of TILA § 130 and 131 require that those sections are not eligible for state exemption and are barred from arbitration agreements"; and (D) "the arbitration agreement, and the

8

embedded delegation clause, were not validly formed, were fraudulently induced, and contain provision(s) [sic] that are illegal that render each contract invalid." (Opposition Brief, Dkt. No. 7, p. 3, 10, 13, 14)[5]

The Court need only address the last argument, however, because the Court holds that the other arguments must be decided by the arbitrator in accordance with the parties' Arbitration Agreement, which expressly states that all issues concerning arbitrability and the validity of the Arbitration Agreement must be decided by the arbitrator and not this Court.

Foulke Management asserts, "any issue raised by Plaintiff as to the validity of the Arbitration Agreement[] is for the Arbitrator to decide and not the [C]ourt based on the express delegation clause in the Arbitration Agreement." (Moving Brief, Dkt. No. 5, p. 17) The Court agrees. The delegation clause at issue is clear and broad: "This agreement applies to all claims and disputes between you and us. This includes, without limitation, all claims and disputes arising out of, in connection with, or relating to . . . [w]hether the claim or dispute must be arbitrated, [and] [t]he validity of this arbitration agreement." (Kopp Cert. Ex. B) See Rent-A-Center,

---

[5] Huertas also argues "Defendant Foulke Management Corporation's arbitration agreement does not apply to Defendant Sciolla Insurance." (Opposition Brief, p. 9) The Court does not address this argument because (1) Foulke Management, the moving party, does not argue that its Arbitration Agreement applies to Sciolla Insurance and (2) Sciolla Insurance has not entered an appearance in this case.

W., Inc. v. Jackson, 561 U.S. 63, 68-69 (2010)("The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.").

It is well-established that "'only an arbitration provision-specific challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable.' If the challenge encompasses the contract as a whole, the validity of that contract, like all other disputes arising under the contract, is a matter for the arbitrator to decide." S. Jersey Sanitation Co., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc., 840 F.3d 138, 143 (3d Cir. 2016)(quoting Rent-A-Center); see also, Quilloin v. Tenet HealthSystem Philadelphia, Inc., 673 F.3d 221, 229 (3d Cir. 2012)(when a "plaintiff 'challenge[s] only the validity of the contract as a whole' rather than the validity of the delegation clause, . . . in accordance with the valid delegation clause, questions of arbitrability (including the arbitrability of the overall agreement to arbitrate) must go to an arbitrator.") (quoting and discussing Rent-A-Center).

Here, Huertas challenges only the validity of the contract as a whole, not the delegation clause specifically. His theory is that he "entered into the yo-yo car sale transaction with defendant FMC under duress in which he blindly obeyed defendant [Foulke

Management's] finance manager Woodrow Wilson and thus signed under duress without seeing the titles of a stack of Official Legal Documents [sic] that included a separate Arbitration Agreement that in turn contained a purported delegation clause." (Opposition Brief, Dkt. No. 7, p. 17) If Huertas were to prevail on this argument, the entire agreement would be invalidated and unenforceable. Compare Rent-A-Center, 561 U.S. at 71 ("where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract-- we nonetheless require the basis of challenge be directed specifically to the agreement to arbitrate before the court will intervene.")[6]; contrast Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc., 867 F.3d 449, 456-57 (4th Cir. 2017)(finding that the plaintiff had "challenged the validity of th[e] delegation [clause] with sufficient force and specificity" by arguing that Virginia law "renders void delegation provisions in putative insurance contracts."). Thus, in accordance with the delegation clause and Rent-A-Center, the Court holds that Huertas' substantive claims, as well as his challenges concerning arbitrability, all must be decided by the arbitrator.

---

[6] See also, S. Jersey Sanitation Co., 840 F.3d at 144 ("It is plain from these paragraphs that South Jersey alleges no arbitration provision-specific fraud, but rather challenges the arbitration provision only as part of its general challenge of the contract. Indeed, South Jersey states in its brief that '[f]raud is a defense that is generally applicable to all contracts and can invalidate a whole contract or certain portions thereof, including arbitrations [sic] agreements.'").

Accordingly, the Court will compel arbitration. However, the claims against Foulke Management will not be dismissed, but rather stayed pending the arbitrator's decision regarding arbitrability.

**B. Capital One's Motion to Compel Arbitration and Huertas' Motion to Amend**

Capital One, relying on the above-quoted arbitration agreement signed by Huertas and Foulke Management, asserts that all claims against it must also be sent to arbitration. In the Court's view, Capital One's argument puts the cart before the horse insofar as (a) Huertas' theory of liability against Capital One, as currently set forth in the instant complaint, is somewhat unclear; and (b) Huertas has indicated his desire to amend his complaint, however Huertas has not filed his proposed amended complaint, as L. Civ. R. 7.1(f) requires. See L. Civ. R. 7.1(f) ("Upon filing a motion for leave to file an amended complaint . . . the moving party shall attach to the motion a copy of the proposed pleading[.]"). Without first determining what the claims-- or proposed claims-- are, the Court cannot determine whether the arbitration agreement is implicated at all.

Therefore, the Court will dismiss without prejudice Huertas' Motion to Amend and grant Huertas leave to file, within three weeks, a renewed Motion to Amend which complies with Local Civil Rule 7.1(f). Capital One's Motion to Compel Arbitration will be administratively terminated pending the Court's decision on Huertas' renewed Motion to Amend. Should Capital One oppose Huertas' renewed

Motion to Amend, it is free to include in its opposition brief any arguments asserted in its current Motion to Compel Arbitration, if appropriate.

**IV. CONCLUSION**

For the foregoing reasons, Foulke Management Corp.'s Motion to Compel Arbitration (Dkt No. 5) will be granted, Capital One's Motion to Compel Arbitration (Dkt No. 17) will be administratively terminated, Huertas' Motion to Amend the Complaint (Dkt No. 21) will be dismissed without prejudice with leave to renew, Huertas' Motion for Leave to File a Sur-reply (Dkt No. 11) will be denied, and Huertas' Motions to Strike (Dkt No. 25, 29) will be denied as moot.[7] An appropriate Order shall issue on this date.

Dated: December 18, 2017

s/ Renée Marie Bumb
_____
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

---

[7] The basis for Huertas' first Motion to Strike [Dkt No. 25] is the undisputed fact that the brief at issue was filed one day late. If that Motion to Strike were not mooted by the Court's disposition of Huertas' Motion to Amend, the Motion to Strike would be denied. Huertas does not assert that he suffered any prejudice as a result of the late filing, rather, at oral argument he merely asserted that "rules are rules." In that regard however, the Court observes that Huertas himself failed to abide by the very rule he seeks to enforce against his adversary, L. Civ. R. 7.1, when he failed to file his proposed amended pleading along with his Motion to Amend.