[Docket No. 38]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| HECTOR L. HUERTAS,<br><br>      Plaintiff,<br><br>      v.<br><br>FOULKE MANAGEMENT CORP., CHERRY HILL MITSUBISHI, ANTHONY TRAPANI, et al.,<br><br>      Defendants. | Civil No. 17-1891 (RMB/AMD)<br><br>OPINION |

**APPEARANCES:**

Hector L. Huertas, *pro se*
P.O. Box 448
Camden, New Jersey 08101

CAPEHART & SCATCHARD, P.A.
By: Laura D. Ruccolo, Esq.
8000 Midlantic Drive, Suite 300S
P.O. Box 5016
Mount Laurel, New Jersey 08054
        Counsel for Defendant Foulke Management Corp.

MCGUIREWOODS LLP
By: Graham Howard Claybrook, Esq.
201 North Tryon Street, Suite 3000
Charlotte, North Carolina 28202
        Counsel for Defendant Capital One Bank, N.A.

**BUMB**, UNITED STATES DISTRICT JUDGE:

    *Pro se* Plaintiff Hector Huertas brings this suit against various defendants in connection with his purchase of a used Hyundai Sonata on December 22, 2016. In the Court's previous Opinion and Order in this suit, the Court granted Defendant Foulke Management

1

Corp.'s Motion to Compel Arbitration and granted Plaintiff leave to file a Motion to Amend his Complaint before addressing Defendant Capital One's Motion to Compel Arbitration. Presently before the Court is Plaintiff's Motion to Amend. Capital One opposes the Motion, arguing that amendment would be futile in two respects. Capital One asserts that (1) all claims in the proposed amended complaint are subject to arbitration, and (2) the proposed amended complaint fails to state a claim. For the reasons stated herein, the Motion to Amend will be granted in part, denied in part, and denied without prejudice in part.

I.  **FACTS**

The proposed amended complaint ("P.A.C.") includes all of the same allegations as the original complaint, and then adds new allegations.[1] As the original allegations are set forth in the Court's previous opinion in this suit, <u>see</u> <u>Huertas v. Foulke Mgmt Corp., et al.</u>, No. CV 17-1891 (RMB/AMD), 2017 WL 6447868 (D.N.J. Dec. 18, 2017), they will not be repeated here, except to the extent necessary to place the proposed claims against Capital One in proper context.

Defendant Foulke Management allegedly provided the financing for Plaintiff's purchase of a car pursuant to a Retail Installment Sale Contract (RISC), and then immediately "assigned" its rights

---

[1] The original complaint is 36 pages long and contains 173 numbered paragraphs. The proposed amended complaint is 72 pages long and contains 350 numbered paragraphs.

2

under the RISC to Defendant Capital One.  (P.A.C. ¶¶ 4, 88, 91, 95-97, 161-62 and Ex. C to original complaint)  The RISC was signed by Plaintiff the day he purchased the car-- December 22, 2016.  (Ex. C) The RISC provides that Plaintiff will repay the loan in 72 monthly payments of $354.80 beginning on February 4, 2017, at an interest rate of 14.28%. (P.A.C. ¶ 147 and Ex. C to original complaint)

"On January 14, 2017," Plaintiff received his "first 'Monthly eStatement'" from Capital One, which "shows that $152.79 worth of interest had accrued during the period of December 22 to December 28, 2016."  (P.A.C. ¶ 192)

"On February 11, 2017," Plaintiff received his "second Monthly eStatement that showed total interest of $339.03 had accrued for the period ending on February 4, 2017."  (P.A.C. ¶ 193)

"On March 4, 2017," Plaintiff allegedly "began paying off the car loan with the first payment that comprised the February 4 ($354.80) and March 4, 2017 ($354.80) payments due, plus a $10.00 late fee for a $719.60 total."  (P.A.C. ¶ 196)

"On April 13, 2017," Plaintiff received his "fourth Monthly eStatement that showed $196.24 in interest had accrued for the period ending April 4 plus $72.14 of prior unpaid interest for a total interest expense of $268.38 for the period ending April 4, 2017."  (P.A.C. ¶ 193)  Plaintiff contends that the April eStatement evidences an interest rate of 19.29%.  (Id. ¶ 198)  Similarly, Plaintiff contends that the May eStatement evidences an interest rate of 19.32%; the June eStatement evidences an interest rate of

3

16.05%; and the July eStatement evidences an interest rate of 16.99%. (Id. ¶¶ 200-207)

The Proposed Amended Complaint asserts the following claims against Capital One: violations of the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.; violation of U.C.C. § 2-312; fraud; civil conspiracy; and violations of the RICO Act.

## II. MOTION TO AMEND STANDARD

Federal Rule of Civil Procedure 15(a)(2), states in relevant part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

"[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." Foman v. Davis, 371 U.S. 178, 182 (1962). The District Court may deny leave to amend "if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000).

"Amendment would be futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 259 (3d Cir. 2014). Therefore, in determining whether an amendment is futile, this Court must apply "the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6)." Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 243 (3d Cir. 2010). That is, when the

4

party opposing the motion to amend asserts that amendment is futile, a motion to amend should only be granted if the proposed amended complaint "contain[s] sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

### III. ANALYSIS

#### A. Arbitration of proposed claims against Capital One

Capital One asserts that amendment would be futile because "this Court has already ruled" that "the claims are subject to mandatory arbitration." (Opposition Brief, Dkt No. 48, p. 2 of 7) To the contrary, the Court did not rule on whether Plaintiff's claims against Capital One are subject to arbitration; indeed, the Court did not even rule that Plaintiff's claims against Foulke Management were subject to arbitration. Rather, the Court ruled that the arbitrability of Plaintiff's claims against Foulke Management is an issue for an arbitrator to decide, pursuant to the valid delegation clause in the Arbitration Agreement signed by Plaintiff and Foulke Management. Foulke Mgmt Corp., 2017 WL 6447868, at *5 (D.N.J. Dec. 18, 2017) ("in accordance with the delegation clause and Rent-A-Center, the Court holds that Huertas' substantive claims, as well as his challenges concerning arbitrability, all must be decided by the arbitrator.").

Capital One's argument assumes that the same analysis applies to Plaintiff's claims against it, but ignores the critical fact

5

that, unlike Foulke Management, Capital One is not a signatory to the Arbitration Agreement. Contrary to Capital One's assertion, the Court has not "already found that" the Arbitration Agreement between Plaintiff and Foulke Management "covers third parties sued by Plaintiff on the same basis." (Opposition Brief, Dkt No. 48, p. 6 of 7)

Moreover, (1) the RISC itself contains no arbitration clause, and (2) Capital One's "welcome letter" to Plaintiff concerning the loan at issue states, "Contract Provisions: If your contract contains an arbitration, waiver of jury trial, or confession of judgment provision, please be advised that Capital One Auto Finance does not enforce these provisions." (P.A.C. ¶ 184 and Exhibit at Dkt No. 20)

Thus, the Court cannot rule, on the present record, that Plaintiff's proposed claims against Capital One are futile on the basis that the claims, or the issue of arbitrability of the claims, are subject to arbitration.

**B. The merits of the proposed claims against Capital One**

(1) <u>TILA</u>

Plaintiff alleges that the RISC made two misrepresentations, which Plaintiff asserts violate the TILA[2]: (1) the RISC allegedly misrepresented that the loan's interest rate was 14.28% when the

---

[2] The TILA-required disclosures are contained in the RISC, and are entitled "FEDERAL TURTH-IN-LENDING DISCLOSURES." (Ex. C to the original complaint) (caps in original)

actual rate charged allegedly was significantly higher; and (2) the RISC allegedly misrepresented that interest on the loan began to accrue immediately, not starting on February 4, 2017, when Plaintiff's first loan payment was due.

Capital One asserts that the proposed amendment would be futile because "the terms of the RISC itself" "directly contradict" Plaintiff's allegations that the RISC misrepresented either the interest rate or the date on which interest began to accrue on the loan. (Opposition Brief, Dkt No. 48, p. 4 of 7) Capital One contends that the documents Plaintiff relies upon conclusively demonstrate that the interest rate Capital One charged was, indeed, 14.28%, and that the RISC indicates that interest on the loan begins to accrue as of December 22, 2016. Therefore, Capital One reasons, the Proposed Amended Complaint fails to plausibly plead that a TILA violation occurred.

As to the interest rate issue, Plaintiff articulates his theory of liability thusly: "By improperly including the $469.45 in processing fees[3] in the RISC [']amount financed['] instead of the RISC [']finance charge['] the creditor disclosed the annual percentage rate as lower than the true annual percentage rate, and misdisclosed [sic] the amount financed and the finance charge." (P.A.C. ¶ 273) The RISC's "Federal Truth-In-Lending Disclosures"

---

[3] The "processing fees" are a $170.45 fee for "Government License / and or Registration" and a $299.00 "Documentary Fee" paid to Foulke Management. (Ex. C to original complaint)

7

state that the "finance charge"-- defined as "[t]he dollar amount the credit will cost you"-- is $8,544.65; and the "amount financed"-- defined as "[t]he amount of credit provided to you on your behalf"-- is $17,000.95.  (Exhibit C to original complaint)  Thus, Plaintiff asserts that the RISC's TILA disclosures should have stated that the "amount financed" was $16,531.50 (i.e., $17,000.95 minus $469.45), and the "finance charge" was $9,014.10 (i.e., $8,544.65 plus $469.45), which would result-- as a matter of mathematics-- in a higher interest rate.  Stated differently, Plaintiff apparently contends that Capital One erroneously included the license and registration fee of $170.45, and the documentary fee of $299.00, in the "amount financed" to mislead Plaintiff into believing that he was getting better credit terms, in the form of a lower annual percentage rate.

Such allegations are sufficient to state a claim for violation of the TILA and Regulation Z; understating the finance charge violates 15 U.S.C. § 1638(a)(3) and 12 C.F.R. § 226.18(d), overstating the amount financed violates 15 U.S.C. § 1638(a)(2) and 12 C.F.R. § 226.18(b), and the resulting understatement of the annual percentage rate violates 15 U.S.C. § 1638(a)(4) and 12 C.F.R. § 226.18(e).  See also, Jones v. Koons Auto., Inc., 752 F. Supp. 2d 670, 683 (D. Md. 2010) ("Koons purportedly failed to disclose certain specified finance charges (i.e., a processing fee, a lien fee, and certain taxes) and failed to disclose the 'correct amount financed.'  These factual allegations of inaccuracy are enough to

8

state a plausible claim for relief."); see generally, In re Sterten, 546 F.3d 278, 287 (3d Cir. 2008) (in a TILA case, observing that, "[u]nder notice pleading standards, it is sufficient for a plaintiff to plead an error in the disclosed finance charges to bring the statutory definition of error into play.") (citing Twombly).

Contrary to Capital One's argument, the face of the RISC does not answer the question of whether the license and registration fee of $170.45, and the documentary fee of $299.00, were properly included in the "amount financed," as opposed to the "finance charge." See Hopkins v. First NLC Financial Servs., LLC, (In re: Hopkins), 372 B.R. 734, 750 (Bankr. E.D. Pa. 2007) (holding that allegations concerning miscalculation of finance charge survived a motion to dismiss, explaining that "for purposes of the instant motion, there is insufficient information to enable the court to determine whether the finance charge was correctly calculated," and observing that the document containing the TILA disclosures, which was attached to the complaint, merely identified the fees but not how they were calculated). The question presented-- whether TILA and Regulation Z require the calculation of the "finance charge" to include the two fees at issue -- is more appropriately addressed at summary judgment. Capital One may very well prevail at summary judgment, but the issue cannot be resolved at the motion to dismiss stage. See, e.g., Tripp v. Charlie Falk's Auto Wholesale Inc., 290 F. App'x 622, 628 (4th Cir. 2008) (affirming district court's grant of summary judgment to defendants, stating, "[b]ecause the Tripps

have not produced evidence to refute CFAW's general practice of charging the $395 processing for both cash and credit transactions, we find that the $395 processing fee was not a 'finance charge' under TILA, and CFAW was not required to disclose it as a 'finance charge.'"); Williams v. Lynch Ford, Inc., 2004 WL 2997508 at *6-7 (N.D. Ill. 2004) (granting summary judgment to defendants on TILA claims holding that a "documentary fee" was appropriately included in the "amount financed," as opposed to the "finance charge"); Hook v. Baker, 352 F. Supp.2d 839, 844 (S.D. Ohio 2004) (granting summary judgment to plaintiff on her TILA claim, explaining, "[t]he testimony of defendant himself supports plaintiff's claim that the $200.00 document fee was assessed only to customers purchasing automobiles from defendant on credit and not to customers who bought such vehicles with cash."); Hodges v Koons Buick Pontiac GMC, Inc., 180 F. Supp. 2d 786, 793 (E.D. Va. 2001) (granting summary judgment to defendants on TILA claim that $289.00 "processing fee" was erroneously included "as part of the amount financed rather than as a finance charge" finding that plaintiff had produced no evidence to contradict defendants' evidence that "it charges a $289.00 dealership processing fee on all sales, whether for cash or for credit."); Brown v. Coleman Investments, Inc., 993 F. Supp. 416, 422 (M.D. La. 1998) ("The Court finds there are genuine issues of material fact in dispute which preclude summary judgment on the issue of whether the $40 'license fee' meets the comparable cash

transaction exception to the [TILA's] definition of 'finance charge.'").

As to the interest accrual date, Plaintiff asserts that the RISC misled him to believe that he was given a "43-day leeway" -- i.e., a grace period from the date of the RISC's execution until the first payment due date of February 4, 2017 -- before interest would accrue. (P.A.C. ¶ 174) Unlike the TILA claim based on the interest rate, this TILA claim based on the accrual date is directly refuted by the RISC itself. Nothing in the RISC suggests that there would be any delay in the accrual of interest. To the contrary, the RISC states that the first monthly payment is "due" on February 4, 2017, indicating that interest must have begun to accrue before February 4, 2017. (Exhibit C to original complaint) Additionally, the RISC states in two different places that "we will figure your finance charge on a daily basis." (Id.) Nothing about these statements could be interpreted as stating that a loan disbursed on December 22, 2016 would not start to accrue interest until February 4, 2017. Therefore, the Proposed Amended Complaint does not plausibly plead that the RISC misrepresented the interest accrual date. Accordingly, Plaintiff's Motion to Amend as to the TILA claim based on the interest accrual date will denied.

(2) Fraud

Plaintiff's fraud claims are premised upon the same factual averments as his TILA claims. For the reasons stated as to the TILA claims, to the extent the fraud claims are based on the TILA

11

interest rate issue the Motion to Amend will be granted, and to the extent the fraud claims are based on the TILA interest accrual date issue the Motion to Amend will be denied.

(3) <u>Substantive RICO</u>

In the section of the Proposed Amended Complaint entitled "How Foulke and Capital One violate the Federal RICO Statute," Plaintiff alleges that Foulke Management and Capital One "compel[ed] the Plaintiff to pay a higher monthly interest rate than the original TILA disclosure." (P.A.C. ¶¶ 152-54) The RICO enterprise is alleged to be the business relationship between Foulke Management and Capital One, whereby Foulke Management allegedly "originates" the loan documented by the RISC and then immediately assigns its rights under the RISC to Capital One. (Id. ¶ 166)[4]

"To prove the existence of a RICO enterprise, a plaintiff must show: (1) that the enterprise is an ongoing organization with some sort of framework for making or carrying out decisions; (2) that the

---

[4] Such practice of automobile dealers assigning notes to finance companies appears to be rather common. <u>See</u>, <u>e.g.</u>, <u>Taylor v. Quality Hyundai, Inc.</u>, 150 F.3d 689, 691 (7th Cir. 1998) ("After the sale [of the motor vehicle], Quality assigned the entire installment contract to Bank One Chicago."); <u>Cenance v. Bohn Ford, Inc.</u>, 621 F.2d 130, 133 (5th Cir. 1980) ("[t]he dealer and Ford prearranged for the assignment of the finance instrument. At no time did the risk of finance reside with the dealer."); <u>Hodges v. Koons Buick Pontiac GMC, Inc.</u>, 180 F. Supp.2d 786 (E.D. Va. 2001); <u>Brown v. Coleman Investments, Inc.</u>, 993 F. Supp. 416, 420 (M.D. La. 1998) ("Brown's retail installment contract was assigned to TMCC as TMCC provided the financing for the sale [of the Toyota Tercel]."); <u>Kinzel v. Southview Chevrolet Co.</u>, 892 F. Supp. 1211, 1214 (D. Minn. 1995) ("Eastern Heights [State Bank of Saint Paul] is the assignee of Ms. Kinzel's and Southview Chevrolet's retail installment contract.").

various associates function as a continuing unit; and (3) that the enterprise be separate and apart from the pattern of activity in which it engages. Simply listing a string of individuals or entities that engaged in illegal conduct, without more, is insufficient to allege the existence of a RICO enterprise." McCullough v. Zimmer, Inc., 382 F. App'x 225, 231 (3d Cir. 2010) (internal citations and quotations omitted).

The Proposed Amended Complaint fails to allege sufficient facts to plausibly support a conclusion that Foulke Management and Capital One function as a RICO enterprise. Indeed, other courts have dismissed RICO claims in analogous cases. See Brown v. Coleman Investments, Inc., 993 F. Supp. 416 (M.D. La. 1998); Vandenbroeck v. CommonPoint Mortgage Co., 22 F.Supp.2d 677 (W.D. Mich. 1998).

Moreover, because the substantive RICO claim fails, the RICO conspiracy claim necessarily fails as well. McCullough, 382 F. App'x at 232 n.9. Accordingly, the Motion to Amend will be denied as to all proposed RICO claims.

(4) Conspiracy

Capital One asserts that Plaintiff's conspiracy allegations are merely conclusory and not based on allegations of fact, thereby falling short of Twombly / Iqbal's plausibility standard. The Court agrees. It appears that the common law conspiracy claim is based on the same facts alleged in support of the proposed RICO claims. The factual allegations are not sufficiently fleshed-out with regard to the alleged conspiracy between Foulke Management and Capital One.

13

Accordingly, with regard to the proposed common law conspiracy claim, the Motion to Amend will be denied.

(5) U.C.C. § 2-312-- Warranty of Title

Plaintiff asserts that Foulke Management breached the U.C.C.'s warranty of title when it sold Plaintiff a car to which it allegedly did not possess title. Further, Plaintiff asserts that Capital One is liable for Foulke Management's alleged breach of warranty by virtue of the FTC holder rule.[5] Capital One responds that it "does not dispute that it is the holder of the RISC for purposes of the FTC holder rule, and does not factually object to the extent Plaintiff's claims are limited to Capital One's status as holder." (Opposition Brief, p. 3 n.2) Nonetheless, Capital One asserts that leave to amend should not be granted as to this claim insofar as its liability is entirely dependent upon a finding of Foulke Management's liability, and all claims against Foulke Management are presently in arbitration.[6]

In light of the ongoing arbitration with Foulke Management, the Court will not grant leave to amend as to this proposed claim at

---

[5] The RISC states "any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof." (Ex. C to the original complaint)

[6] It is not clear whether Plaintiff has actually asserted a breach of warranty claim against Foulke Management in the ongoing arbitration. However, as set forth in the Court's previous Opinion, the factual question of whether Foulke Management did, or did not, possess title to the car Plaintiff purchased is before the arbitrator.

this time.  In this regard, the Motion to Amend will be denied without prejudice, with leave to refile after the arbitration with Foulke Management is completed.

**C. Proposed claims against other Defendants / proposed Defendants**

(1) <u>New claims against existing Defendant Foulke Management</u>

The Proposed Amended Complaint seeks to add the following claims against Foulke Management: (a) violation of U.C.C. § 2-312; (b) fraud; (c) civil conspiracy; and (d) violations of the RICO Act. Consistent with the law of the case as set forth in this Court's Order and Opinion of December 18, 2017, the Court cannot address the merits of these proposed claims unless and until the arbitrator determines that such proposed claims are not arbitrable. Accordingly, the Motion to Amend, to the extent it seeks to add new claims against Foulke Management, will be denied without prejudice. If the arbitrator concludes that the proposed claims are not subject to arbitration, Plaintiff may renew the Motion to Amend as to the proposed claims against Foulke Management.

(2) <u>New claims against new Hyundai Defendants</u>

Plaintiff alleges that Hyundai Motor America, Hyundai Capital America and Burns Hyundai are liable for alleged unauthorized vehicle repair and maintenance charges and alleged ineffectual repairs.  (P.A.C. ¶¶ 105-26, 221-31, 291-22)  Allegedly, the incident occurred sometime between June 15, 2017 and August 3, 2017. (Id.)  The Proposed Amended Complaint asserts against the proposed Hyundai Defendants claims for: violation of the Magnuson-Moss

Warranty Act (Count 7); violation of the New Jersey Unfair and Deceptive Acts and Practices Act (Count 8); negligence (Count 9); "violations of N.J.A.C. 13:45A-26C.2" (Count 10); and fraud (Count 11).

Such proposed claims against the proposed Hyundai Defendants are not based on the same transaction or occurrence as the claims asserted in the original complaint. Therefore, they may not be included in this suit. See Sanders v. Rose, 576 F. App'x 91, 94 (3d Cir. 2014) ("[Federal] Rule [of Civil Procedure] 20 allows a plaintiff to join defendants in one action if he asserts a right to relief arising out of the same transaction or occurrence and any question of law or fact common to all defendants will arise in the action."); see also, Fed. R. Civ. P. 21 ("The court may [] sever any claim against any party.").

With respect to the proposed claims against the proposed Hyundai Defendants, Plaintiff's Motion to Amend will be denied.

(3) New claims against new Defendant "Experian PLC"

The Proposed Amended Complaint asserts RICO claims against "Experian PLC" as an alleged "aider and abettor" of Defendants Foulke Management and Capital One (Counts 15 and 16). The only factual averment as to Experian is that it "fraudulently omitted" "recall information" concerning the car Plaintiff purchased, thereby allegedly artificially inflating the price of the car. (P.A.C. ¶¶ 182, 341)

These proposed claims fail for three independent reasons. First, the lone allegation that Experian "fraudulently omitted" "recall information" concerning the car Plaintiff purchased is insufficient under Fed. R. Civ. P. 8 and Twombly / Iqbal. Second, the proposed aiding and abetting claims fail because the substantive RICO claim fails. Third, the proposed aiding and abetting claims fail as a matter of law; the Third Circuit has held that "no such cause of action exists under RICO." Pennsylvania Ass'n of Edwards Heirs v. Rightenour, 235 F.3d 839, 840 (3d Cir. 2000) (citing Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644 (3d Cir. 1998)).

With respect to the proposed claims against proposed Defendant Experian, Plaintiff's Motion to Amend will be denied.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Amend will be granted as to the TILA interest rate claim and attendant fraud claim and denied in all other respects. Such denial is without prejudice as to all proposed claims against Foulke Management and the proposed warranty of title and common law conspiracy claims against Capital One, and with prejudice as to all other proposed claims. An appropriate Order shall issue on this date.

Dated: August 13, 2018

s/ Renée Marie Bumb
_____
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE