[Dkt. Nos. 118 and 120]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| HECTOR L. HUERTAS, | : |
| Plaintiff. | : |
| v. | Civ. No. 17-1891 (RMB/AMD) |
| FOULKE MANAGEMENT CORP. et al, | **OPINION** |
| Defendants. | : |

RENÉE MARIE BUMB, UNITED STATES DISTRICT JUDGE:

    Defendant Capital One, N.A., d/b/a Capital One Auto Finance ("Capital One")[1] has filed a Motion for Summary Judgment [Dkt. No. 120]. Plaintiff Hector Huertas opposes the motion and has also filed a Motion for Summary Judgment [Dkt. No. 118]. For the reasons set forth herein, Capital One's motion will be granted, and Huertas' motion will be denied.

    On December 22, 2016, Plaintiff Huertas[2] purchased a used vehicle from the Foulke Management Corporation car dealership in

---

[1] Capital One is improperly identified in the Amended Complaint as Capital One Bank, N.A., and Capital One Finance Corporation.

[2] Plaintiff Hector Huertas is no stranger to this Court. Between 2003 and 2017 when the instant suit was filed, Plaintiff filed approximately 23 lawsuits in this District alone. While Plaintiff's suits have included a bankruptcy appeal and a petition for a writ of mandamus (both of which were ultimately terminated on procedural grounds due to Plaintiff's inaction),

Cherry Hill, New Jersey ("Foulke Dealership"). Defendant's Statement of Material Facts, Docket No. 120, ("DSOF"), at ¶ 1. As part of the transaction, the Foulke Dealership provided Plaintiff a Retail Installment Sales Contract (the "RISC") and a Motor Vehicle Retail Order Agreement. DSOF, ¶¶s 3-4.

The Motor Vehicle Retail Order Agreement identified a $8.95 "On Line Registration" fee, a $161.50 Estimated Motor Vehicle Fee defined at paragraph 15[3], and a $299.00 Documentary Service Fee defined at paragraph 16 as "a fee charged by the Dealer in an amount that covers costs and reflects the value of the benefit provided by the service. In some cases, the fee includes some services that may be optional or may be performed by the customer." DSOF at ¶¶s 5, 6 and 8. Thereafter, on the

---

the majority of Plaintiff's suits have been related to various credit transactions involving Plaintiff.

[3] The Estimated Motor Vehicle Fee refers to paragraph 15 which provides as follows:

> **TITLE AND REGISTRATION FEES:** These are fees charged by the State of New Jersey or y0ur state of residence for the title and registration for your vehicle, any additional paperwork necessary to process your title and registration, and where applicable, for transferring the title of your trade-in. These fees may be estimated. In the event the actual fees charged by the State are different, Dealer will refund any overcharge to the Customer in the ordinary course of business. In the event of an undercharge, Customer agrees to pay any underestimate to the Dealer.

same day, the Foulke Dealership assigned the RISC to Defendant Capital One.

In September 2017, Plaintiff stopped making payments despite being in possession of the vehicle.[4] On August 26, 2018, Plaintiff filed an Amended Complaint in which he asserts two claims against Capital One: a violation of TILA (Count One), and fraud under TILA (Count Two). [Dkt. No. 54].

Before turning to the merits of the within Motions, it bears noting that Plaintiff consumes much of his Motion contending that he never owned and does not own the vehicle. These arguments are false and made in bad faith. Pursuant to earlier Court-ordered arbitration involving the Foulke Dealership, the arbitrator considered Plaintiff's claims that (1) the title issued to him by the New Jersey Motor Vehicle Commission was not genuine, (2) the Foulke Dealership had not taken proper title to the vehicle before selling it to him, and (3) the Foulke Dealership had failed to pay off a lien before selling the vehicle to him. The arbitrator rejected all of Plaintiff's claims in their entirety.

<u>Truth in Lending Act (Count One)</u>

---

[4] Plaintiff claims he does not drive the car, but it only sits in his driveway. As he sets forth in his brief, he stopped making payments "because he lost faith in ever receiving a valid title under his name for the subject vehicle and because the monthly payment was higher then what he had verbally agreed to." [Dkt. No. 119, at 4.]

3

First, Plaintiff alleges a violation of the TILA because the $469.45 in processing fees should not have been included in the RISC amount financed since such fees were related to the extension of credit.  See Amended Complaint at ¶¶ 78, 87. Capital One responds, however, that the TILA claim fails because the charges are not "finance charges" as defined by TILA and the Foulke Dealership charges such fees regardless of whether it is a cash or credit sale of vehicle.

Pursuant to TILA, 15 U.S.C. § 1638(a), a creditor in a consumer credit transaction must disclose (1) the identity of the creditor, (2) the amount financed, (3) a statement of the consumer's right to obtain a written itemization of the amount financed, the finance charge, the Annual Percentage Rate, the total payments and the number, amount, and due dates or period of payments scheduled o repay the total payments.  These disclosures must be "clearly and conspicuously in writing" to the consumer. 12 C.F.R. § 226.17(a)(1).  A "finance charge" is "the sum of all charges, payable by the person to whom the credit is extended, and imposed . . . by the creditor as an incident to the extension of credit."  15 U.S.C. § 1605(a) (emphasis added).

Contrary to Plaintiff's bald assertion, the undisputed evidence shows that the Foulke Dealership charges the fees in question-- the "On Line Registration Fee," the "Estimated Motor

4

Vehicle Fee," and the "Documentary Service Fee"-- on all transactions regardless of whether the customer buys with credit or cash. In other words, the fees were not incident to the extension of credit. See, e.g., Tripp v. Charlie Falk's Auto Wholesale Inc., 290 F. App'x 622, 628 (4th Cir. 2008) (affirming district court's grant of summary judgment to defendants, stating, "[b]ecause the Tripps have not produced evidence to refute CFAW's general practice of charging the $395 processing for both cash and credit transactions, we find that the $395 processing fee was not a 'finance charge' under TILA, and CFAW was not required to disclose it as a 'finance charge.'").

Fraud (Count Two)

As best this Court can understand Plaintiff's fraud claims, Plaintiff contends that Defendant Capital One engaged in fraud because it knew the fees were part of the financing and should have been included in the finance charge. The Court has already rejected such argument for the reasons set forth above.

To the extent Plaintiff's claim is that Defendant Capital one "perpetrated [a] bait-and-switch scheme to defraud the pro se Plaintiff to maximize their profits" and that Capital One never "intended to abide by the original terms from the onset," Amended Complaint at ¶ 86, there is simply no such evidence. Plaintiff alludes to an e-mail he had received earlier from Capital One to somehow support his claim that Capital One duped

5

him into getting financing from the Foulke Dealership ("Defendants induced the plaintiff to accept the RISC as a loan agreement prepared solely by Foulke . . ."). See Dkt. No. 122, at 4. Somehow, he attempts to tie this e-mail into an argument that Capital One spoke with the Foulke Dealership before the RISC was consummated. Such evidence is not only speculative, it is contradicted by Plaintiff's further contention that he "never received such financing nor any purchase money loan from Defendants to buy a Hyundai car as promised." See Dkt. No. 122, at 3.

Finally, in his Motion, Plaintiff alleges that Capital One did not disclose the actual APR in the RISC as required. According to Plaintiff, the simple interest APR disclosed in the RISC of 14.28% generates a monthly payment of $352.87, not $354.80 as disclosed in the RISC. To the extent Plaintiff claims the APR is incorrect because it did not include the processing charges, the Court has rejected such argument supra. To the extent Plaintiff alleges a mathematical error, the Court is not persuaded. Capital One responds by claiming that Plaintiff's math calculations do not account for "odd-days interest" or "interim interest" which accumulated between the settlement of the loan (December 22, 2016) and the beginning of the first full payment month (January 4, 2017). The Court finds

the calculations correct, and Plaintiff's response neither helpful nor does it dispute the Defendant's calculations.[5]

Accordingly, for the foregoing reasons, Capital One's Motion is GRANTED WITH PREJUDICE [Dkt. No. 120] and Plaintiff's Motion is DENIED.  An appropriate Order accompanies this Opinion.


Dated: April 15, 2020             s/Renée Marie Bumb_____
                                  RENÉE MARIE BUMB
                                  United States District Judge

---

[5]  To the extent Plaintiff asserts that Defendant Capital One violated 12 U.S.C. § 24(7) and the Office of the Comptroller of the Currency requirements, such claims are not alleged in the Amended Complaint and therefore the Court does not address them.

7